UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

KAYSON PEARSON,

                *Plaintiff*,

    -against-                                         9:20-CV-1175 (TJM/TWD)

ANTHONY J. ANNUCCI, et al.                      TJM/TWD

                *Defendants*.

-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## THE DEFENDANTS' MOTION TO DISMISS

                                              LETITIA JAMES
                                              Attorney General of the State of New York
                                              Attorney for Defendants Anthony Annucci, Dr. John Morley, James O'Gorman, Dr. Carl Koenigsmann, Joseph Bellnier, John Colvin, Matthew Thoms, Stewart T. Eckert and Donald Venettozzi

                                              The Capitol, Albany, New York 12224

Denise P. Buckley
Assistant Attorney General, of Counsel
Bar Roll No. 519278
Telephone: (518) 776-2294

                                                              Date: March 24, 2021

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**……………..……………………………………………1

**PROCEDURAL BACKGROUND**…………………..…………………………………...1

**FACTUAL ALLEGATIONS**……………………………………………………………2

**STANDARD OF REVIEW**…...…………………………………………………………4

**ARGUMENT**………..……………………………………………………………………5

    I.    **PLAINTIFF'S CLAIMS PERTAINING TO EVENTS THAT TOOK PLACE PRIOR TO SEPTEMBER 25, 2017 ARE BARRED BY THE STATUTE OF LIMITATIONS**…………….....……………………………………………….5

    II.   **THE FAC DOES NOT ALLEGE SUFFICIENT PERSONAL INVOLVEMENT BY DEFENDANTS IN A CONSTITUTIONAL VIOLATION**.…………………7

**CONCLUSION**……………….....………………………………………………………..11

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of the motion on behalf of Defendants Anthony Annucci, John Morley, James O'Gorman, Carl Koenigsmann, Joseph Bellnier, John Colvin, Matthew Thomas, Stewart Eckert, and Donald Venettozzi ("Defendants") seeking an Order dismissing Plaintiff Kayson Pearson ("Plaintiff")'s First Amended Complaint ("FAC") (Dkt. No. 23) pursuant to Federal Rule of Civil Procedure 12(b)(6). As described in further detail below, the FAC must be dismissed in its entirety because Plaintiff fails to allege sufficient facts from which a violation of the Eighth and Fourteenth Amendments to the United States Constitution could be reasonably inferred. As such, the FAC must be dismissed in its entirety based on Plaintiff's failure to state a claim upon which relief can be granted.

## PROCEDURAL BACKGROUND

Plaintiff commenced the instant litigation with the filing of a Complaint on September 25, 2020. *See, generally,* Dkt. No. 1. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages from all defendants, under 42 U.S.C. § 1983. *Id.,* at pp. 34-35. On January 21, 2021, a motion to dismiss the Complaint in its entirety was filed on behalf of the individually named defendants. *See* Dkt. No. 21. In response, Plaintiff filed the FAC, rendering the motion to dismiss the Complaint moot. *See* Dkt. Nos. 23 and 25. The FAC removed Albert Prack as a named Defendant and revised a number of the factual allegations in the original pleading. Compare Dkt. No. 1 with Dkt. No. 23. Defendants now respond to the FAC by pre-Answer motion to dismiss. The instant motion is made within the time-frame set by the Court. *See* Dkt. No. 25.

1

## FACTUAL ALLEGATIONS

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See, generally,* Dkt. No. 23.[1] Plaintiff has been confined to several correctional facilities throughout the State during his incarceration and, as of the date of the FAC, is housed in general population at Wende Correctional Facility ("Wende"). *Id.,* ¶13. Plaintiff alleges that the Defendants—which include nine (9) individually named DOCCS employees and fifteen (15) John and Jane Doe defendants employed by DOCCS—violated a variety of his constitutional rights by allegedly placing him in the Special Housing Unit ("SHU") at several State correctional facilities as a result of being assigned administrative segregation ("Ad Seg") status. *Id.*, ¶¶1-10.

The claims in the FAC revolve around Plaintiff's confinement to the SHU on Ad Seg status during the following time-frames and at the following locations: from December 15, 2006 to May 23, 2016 while Plaintiff resided at Upstate Correctional Facility ("Upstate"); a five day period from June 15 to June 20, 2011 while Plaintiff was housed temporarily at Clinton Correctional Facility ("Clinton") for mental health observation; from May 26, 2016 to January 11, 2018 while Plaintiff resided at Five Points Correctional Facility ("Five Points"); from January 11, 2018 to April 17, 2018 while Plaintiff resided at Wende; and from April 17, 2018 to June 2019 while Plaintiff resided at Mid-State Correctional Facility ("Mid-State"). *Id.,* ¶13.

Plaintiff resided in DOCCS' general prison population ("general population") from August 4, 2004 when he was admitted into the custody and care of DOCCS until April 14, 2006 when he was placed on Ad Seg status. *Id.,* at ¶¶33-34. Plaintiff was placed on Ad Seg status due to a

---

[1] The facts alleged in the FAC are accepted as true for the purpose of the instant motion only. *Johnson v. Rowley*, 569 F3d 40, 43 (2d Cir. 2009).

2

disciplinary incident in which he stabbed his attorney with a plastic knife during a court visit in an effort to escape custody. *Id.,* at ¶34.

DOCCS officials have the authority to place prisoners into Ad Seg in instances where they determine that the prisoner threatens the safety and security of the prison. *Id.,* at ¶36. The Ad Seg status of an individual is periodically reviewed to determine if continued segregation is warranted. *Id.*

While in Ad Seg, Plaintiff was confined to a single-occupancy 8- -by-14-foot concrete cell. *Id.,* at ¶40. The FAC generally describes Plaintiff's cell as "dirty" with no indication as to what that entailed. *Id.*

Plaintiff was denied access to opportunities for group meals, group education, group prayer, group recreation, or therapeutic groups or programs for mental health and behavioral needs. *Id.,* at ¶¶40, 42-43. However, Plaintiff did have access to a counselor who made rounds every day. *Id.,* at ¶44.

From 2006 to 2015, Plaintiff was permitted one 30-minute phone call per month; thereafter, Plaintiff's was permitted one 30-minute phone call per week. *Id.* Plaintiff was allowed to see visitors – without contact – once a week. *Id.*

Plaintiff was allowed outdoor recreation, which was limited to one hour per day, until 2012 when he was allowed two hours of recreation each day. *Id.,* at ¶42. Plaintiff's outdoor recreation took place in a 6--by-8-foot empty pen with no equipment or structure to facilitate exercise. *Id.*

Plaintiff's cell was lit by a bright light during daytime hours regardless of Plaintiff's complaints. *Id.,* at ¶40. For an unspecified period of time and at unspecified dates, the water from the sink in Plaintiff's cell was dirty. *Id.* Plaintiff was allowed to shower three times a week, but

often the water was not hot. *Id.,* at ¶41. Plaintiff's cell was cold each year from September until mid-October when the heat came on. *Id.*

Plaintiff was allocated unspecified privileges with regard to personal property and commissary purchases. *Id.*, at ¶48.

Plaintiff was placed into a step-down program on April 12, 2018. *Id.,* at ¶46. The conditions of Plaintiff's confinement during his participation in the step-down program were identical to Ad Seg with the exception of an additional four hours of inmate programming sessions each week. *Id.*[2] The inmate programming consisted mostly of anger management sessions which Plaintiff found to be meaningless for an inmate who had been in Ad Seg for over a decade. *Id.,* at ¶48.

Plaintiff was released into general population in June 2019 and has not been housed on Ad Seg status in the SHU since then. *Id.*, ¶13.

## STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all plausible factual allegations in the FAC and accord Plaintiff the benefit of all reasonable inferences. *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018). However, "[l]egal conclusions masquerading as factual conclusions" should not be accepted as true. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). While a complaint need not contain "detailed factual allegations" to withstand a motion to dismiss for failure to state a claim, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of

---

[2] The FAC's description of programming Plaintiff received during step-down indicates that Plaintiff received some programming while on Ad Seg status in the SHU. However, the FAC does not indicate the content of the programming Plaintiff received while on Ad Seg status.

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (citing *Twombly*, 550 U.S. at 555, 557). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). Relief is plausible on its face when the complaint's factual allegations give rise to a "reasonable inference" that a defendant is liable. *Id.*

## ARGUMENT

I. **PLAINTIFF'S CLAIMS PERTAINING TO EVENTS THAT TOOK PLACE PRIOR TO SEPTEMBER 25, 2017 ARE BARRED BY THE STATUTE OF LIMITATIONS.**

Claims brought pursuant to 42 U.S.C. §1983 are subject to a three-year statute of limitations period. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) (holding that the applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years). Here, the Complaint was filed on September 25, 2020. *See* Dkt. No. 1. To the extent that the FAC involves allegations that pre-date September 25, 2017, such claims are barred by the statute of limitations. This includes all claims that occurred while Plaintiff was housed at Upstate and Clinton. *See* Dkt. No. 23 at ¶13. It also includes all of the claims that occurred while Plaintiff was housed at Five Points up to September 25, 2017. *Id.*

The "continuing violation doctrine" does not cure this statutory defect insofar as Plaintiff's allegations pre-dating September 25, 2017 are concerned. As the Court observed in *Papelino v. Albany College of Pharm. of Union Univ*., 633 F.3d 81, 91 (2d Cir. 2011), "under the continuing

5

violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as 'an act contributing to that hostile environment [took] place within the statutory time period.'" Citing *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) and *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). However, "the continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken 'pursuant to a general policy that results in other discrete acts occurring within the limitations period.'" *Rowe v. New York State Dep't of Taxation & Fin.*, 786 F. App'x 302, 304 (2d Cir. 2019) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012). Each discrete act "starts a new clock for filing charges alleging that act.'" *Kennedy v. Bernhardt*, No. 18-CV-647, 2020 U.S. Dist. LEXIS 237674, at *9-10 (W.D.N.Y. Dec. 16, 2020) (quoting *Taylor v. City of New York*, 207 F. Supp. 3d 293, 301 (S.D.N.Y. 2016)). Furthermore, a plaintiff cannot establish a continuing violation merely because s/he "continues to feel the effects of a time-barred discriminatory act." *McFadden v. Kralik*, No. 04 Civ. 8135, 2007 U.S. Dist. LEXIS 21875, 2007 WL 924464, *7 (S.D.N.Y. Mar. 28, 2007) (citing *Harris v. City of New York, 186 F.3d 243, 250* (2d Cir. 1999)).

Here, Plaintiff's claims revolve around a series of discrete acts - i.e., a series of Ad Seg reviews from Plaintiff's admission to Ad Seg in 2006 up to the determination that led to Plaintiff's release to general population in June 2019. As each Ad Seg review pre-dating September 25, 2017 constituted a discrete act, the continuing violation doctrine does not apply. Therefore, all claims pre-dating September 25, 2017 are barred by the three-year statute of limitations.

## II. THE FAC DOES NOT ALLEGE SUFFICIENT PERSONAL INVOLVEMENT BY DEFENDANTS IN A CONSTITUTIONAL VIOLATION.

As described above, Plaintiff must provide sufficient factual allegations to support his claims in order to meet the pleadings standard. *See supra*, "Standard of Review". Furthermore, as to each Defendant in a suit brought under Section 1983, Plaintiff "must allege facts showing the defendant's personal involvement in the alleged constitutional violation." *Rivera v. Lempke*, 810 F. Supp.2d 572, 576 (W.D.N.Y. 2011); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Mere conclusory allegations are insufficient to establish personal involvement. *Brown v. Artus*, 647 F. Supp.2d 190, 200 (N.D.N.Y. 2009).

The FAC alleges violations of Plaintiffs' Eighth Amendment rights stemming from the length of the imposition of Ad Seg status on him and the conditions of his confinement while on Ad Seg. *See* Dkt. No. 23, at ¶¶104-112 and 114-116. In addition, the FAC alleges violations of Plaintiff's Fourteenth Amendment procedural due process rights based an alleged denial of meaningful and timely periodic review of Plaintiff's placement on Ad Seg status. *Id.,* at ¶¶118-120.

"To state a claim under the Eighth Amendment based upon conditions of confinement, an inmate must satisfy both an objective and a subjective element. (citation omitted)  To satisfy the objective element, a plaintiff must establish that he was incarcerated under conditions that resulted in a 'sufficiently serious' deprivation, such as the denial of a 'life[ ] necessit[y]' or a 'substantial risk of harm.' (citation omitted)… To satisfy the subjective element, a plaintiff must establish that the 'defendant official acted with a sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety.'" (citation omitted)… 'The official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

7

he must also draw the inference.'" (citation omitted) *Porter v. Uhler*, 2019 U.S. Dist. LEXIS 26918, at \*20-22 (N.D.N.Y., February 19, 2019).

"To establish a procedural due process claim under § 1983, a prisoner must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process." *Id.,* at \*22, citing *Ortiz v. McBride*, 380 F.3d 649 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).

Here, the FAC does not allege sufficient facts to satisfy the pleadings standard or to support a reasonable inference of any Defendant's personal involvement in an alleged constitutional violations. Indeed, Plaintiff relies on the very "unadorned, the-defendant-unlawfully-harmed-me-accusation[s]" that the Supreme Court decried in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In particular, the FAC alleges that the Defendants "on at least one occasion since September 2017…reviewed, approved, and signed-off on the disciplinary review boards' continued decisions" to retain Plaintiff's Ad Seg status. *Id*., at ¶22 (referring to Defendants Annucci, Morely, O'Gorman, Koenigsmann and Bellnier); at ¶75 (referring to Defendants Colvin, Thoms, and Eckert); at ¶76 (referring to Defendant Venettozi). Such an allegation falls short of creating a plausible inference that the Defendants acted with deliberate indifference to Plaintiff's health or safety. Furthermore, it cannot be plausibly inferred that the Defendants deprived Plaintiff of an actual liberty interest without affording him sufficient process simply by virtue of the fact that they reviewed, approved, and signed-off on a disciplinary review board decision. Nowhere in the FAC is it alleged that the Defendants were aware at the time that they reviewed, approved and signed-off on the board's decision that Plaintiff had not been afforded the process to which he was due.

Furthermore, the FAC falls short of alleging that any of the Defendants were in a position to, and planned to, continue Plaintiff's confinement in Ad Seg indefinitely without any regard to his constitutional and statutory rights.

Moreover, while the FAC refers to the fact that some of the Defendants have been named as defendants in other lawsuits involving constitutional challenges and Ad Seg status (*Id.*, at ¶¶ 15-16, 79 and FN 5), the FAC does not allege any facts from which it could be plausibly inferred that the naming of these individuals as defendants in other litigation somehow makes them personally involved in the deprivation of the constitutional rights that Plaintiff here is alleged to have sustained.

Finally, it is not enough for Plaintiff merely to allege that a policy or custom is unconstitutional and that the supervisory official is aware of that policy or custom, as the FAC broadly alleges. *See* Dkt. No. 23, ¶¶ 15, 17, 79, 112, 116, 122. Instead, he must specifically allege that the official knew that unconstitutional actions were taking place, i.e., that Defendants knew about the constitutional deprivations alleged by Plaintiff. *See McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983) (supervisory official may be liable where he created or allowed a policy or custom under which unconstitutional practices occurred [or? And?] when he has "knowledge that unconstitutional practices were taking place"). The FAC does not allege sufficient facts from which this can be plausibly inferred. Importantly, there is no allegation that Defendants were familiar with the facts and circumstances of Plaintiff's position or that they knew that Plaintiff's placement in Ad Seg was improper.

In sum, because the FAC fails to go beyond conclusory assertions that the Defendants violated Plaintiff's rights, the FAC must be dismissed as a matter of law as against them.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the FAC must be dismissed in its entirety as a matter of law.

Dated: Albany, New York
       March 24, 2021

                                    LETITIA JAMES
                                    Attorney General of the State of New York
                                    Attorney for Defendants Anthony Annucci,
                                    Dr. John Morley, James O'Gorman, Dr. Carl
                                    Koenigsmann, Joseph Bellnier, John Colvin,
                                    Matthew Thoms, Stewart T. Eckert, and Donald
                                    Venettozzi
                                    The Capitol, Albany, New York

                                    By: */s/ Denise P. Buckley*
                                    Denise P. Buckley,
                                    Assistant Attorney General, of
                                    Counsel,
                                    Bar Roll No. 519278;
                                    Telephone: (518) 776-2294,
                                    e-mail (not for service of papers):
                                    denise.buckley@ag.ny.gov

To (via CM/ECF):    James D. Arden, Esq.
                          Sidley Austin LLP
                          787 Seventh Avenue
                          New York, NY 10019-6099