**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KAYSON PEARSON,**

                                        **Plaintiff,**

         **v.**                                                    **9:20-cv-01175**

**ANTHONY J. ANNUCCI, Acting**
**Commissioner, Department of Corrections**
**and Community Supervision; DR. JOHN**
**MORLEY, DOCCS Deputy Commissioner &**
**Chief Medical Officer; JAMES O'GORMAN,**
**Deputy Commissioner for Correctional**
**Facilities; DR. CARL KOENIGSMANN,**
**former DOCCS Deputy Commissioner &**
**Chief Medical Officer; JOSEPH BELLNIER,**
**former DOCCS Deputy Commissioner for**
**Correctional Facilities; JOHN COLVIN,**
**Superintendent of Five Points; MATTHEW**
**THOMS, Superintendent of Mid-State;**
**STEWART T. ECKERT, Superintendent of**
**Wende; DONALD VENETTOZZI, Director**
**of DOCCS Special Housing and Inmate**
**Disciplinary Program; JOHN or JANE DOES**
**1–5, members of the DOCCS SHMC at Five**
**Points; JOHN or JANE DOES 6-10, members**
**of the DOCCS SHMC at Mid-State; and**
**JOHN or JANE DOES 11-15, members of the**
**DOCCS SHMC at Wende,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                              **DECISION and ORDER**


**I.        INTRODUCTION**

1

Plaintiff Kayson Pearson commenced this action through counsel asserting that the defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. *See* First Amended Complaint ("FAC"), Dkt. 23.  He contends that while in the custody of the New York Department of Corrections and Community Supervision ("DOCCS") he was subjected to thirteen consecutive years in solitary confinement without appropriate periodic reviews. *Id*.[1]  The action is brought pursuant to 42 U.S.C. § 1983 and seeks declaratory relief, as well as compensatory and punitive damages from all defendants.  *See id.*   Defendants Anthony Annucci, John Morley, James O'Gorman, Carl Koenigsmann, Joseph Bellnier, John Colvin, Matthew Thomas, Stewart Eckert, and Donald Venettozzi ("Defendants") move pursuant Federal Rule of Civil Procedure 12(b)(6) to dismiss the action against them.  Dkt. 26.  Defendants contend that Plaintiff's claims pertaining to events that took place prior to September 25, 2017 are barred by the applicable statute of limitation, and that the FAC fails to allege facts plausibly demonstrating each defendant's personal involvement in the alleged constitutional violations.  *See id.*  Plaintiff opposes the motion, Dkt. 30, and Defendants file a reply.  Dkt. 32.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citation omitted). "A claim has facial plausibility when the plaintiff

---

[1]Pearson uses the term "solitary confinement" to refer to his confinement in the Special Housing Unit ("SHU") under administrative segregation ("Ad Seg") status as well as his time in the step-down program because, he contends, the conditions of Ad Seg and the step down program were virtually identical for him. *See* FAC ¶¶ 46-49.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In considering a motion to dismiss, "the court is to accept as true all facts alleged in the complaint ... [and] draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

## III.   DISCUSSION

### a.  Statute of Limitations

Claims brought pursuant to 42 U.S.C. §1983 are subject to a three-year statute of limitations period. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). The Complaint was filed on September 25, 2020. *See* Dkt. 1.  Thus, Plaintiff's claims must have accrued after September 24, 2017.

A constitutional claim premised on a discrete violation typically accrues when the "plaintiff either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).  However, the continuing violation doctrine "provides an exception to the normal knew-or-should-have-known accrual date." *Id*. (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999))(internal quotation marks omitted). The doctrine "applies to claims composed of a series of separate acts that collectively constitute one unlawful [] practice," and where applicable, "the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable. . . claim." *Id*. (internal quotation marks and citations omitted).  The continuing violation doctrine applies to Eighth Amendment claims premised on prolonged solitary

3

confinement. *See id.* at 224 (applying the continuing violation theory to a prisoner's Eighth Amendment claim challenging his prolonged placement in solitary confinement); *see also Smith v. Annucci*, 6:18-cv-06261 EAW, 2019 WL 539935, at *7 (W.D.N.Y. Feb. 11, 2019) (applying continuing violation doctrine to Eighth Amendment challenge to long-term confinement in administrative segregation).  This is so because "whether incarceration in the SHU violates the Eighth Amendment . . . depends on the duration and conditions of confinement" and only accrues after the inmate has spent "some threshold period of time" in solitary confinement. *Hasty*, 802 F.3d at 224. The accrual date for such an Eighth Amendment claim is therefore "a question of fact determinable only by a close assessment of the conditions to which [the inmate] was subjected as a function of the length of that confinement." *Id.*

Plaintiff's Eighth Amendment claims are substantially premised on his thirteen-year-long confinement in Administrative Segregation. *See* FAC ¶ 2. The accrual date for Plaintiff's Eighth Amendment claims (and thus the beginning of the limitations period) is necessarily a question of fact that requires a "close assessment of the conditions to which [Plaintiff] was subjected," something that cannot be done at the pleading stage. *Hasty*, 802 F.3d at 224.  Additionally, Plaintiff's stay in solitary confinement continued past September 25, 2017 given that he remained in solitary confinement until as late as June 2019. *See* FAC ¶ 13.  Accordingly, Defendants' motion directed to the Eighth Amendment claims is denied.

Turning to the procedural due process claim asserted in the FAC, Plaintiff argues that "[n]o *claim* brought by Mr. Pearson predates September 25, 2017.  And while there

may be certain allegations applicable to Mr. Pearson's due process claim that pre-date September 25, 2017, the FAC alleges a multitude of discrete actions establishing that his Fourteenth Amendment right to due process was violated that either apply to the entire duration of Mr. Pearson's time in solitary confinement (which lasted until June 2019) or which expressly occurred after September 2017. . . . [T]he fact that the statute of limitations may exclude allegations prior to September 25, 2017 is not dispositive of Mr. Pearson's due process claim." Dkt. 30, at 10-11 (emphasis in original).

Because Plaintiff makes specific allegations in the FAC relating to his due process claim which post-date September 2017, *see, e.g.*, FAC ¶ 68 ("Mr. Pearson received no reviews at all during his time in the step-down program from April 2018 to June 2019 . . . ."); *id.* ¶ 74 ("[E]ach of the DOCCS Deputy Commissioners and DOCCS Superintendents were involved in at least one decision since September 2017 to continue the confinement of Mr. Pearson in Ad Seg or in the step down program"); *id* ¶ 75 ("Defendants Eckert, Colvin and Thoms, as Superintendents, on at least one occasion since September 2017, reviewed, approved, and signed-off on the disciplinary review boards' continued decisions to keep Mr. Pearson confined in Ad Seg, in knowing disregard of the lack of justification for such confinement."); *id.* ¶ 76 ("Defendant Venettozzi, as SHU Director, on at least one occasion since September 2017, reviewed, approved, and signed-off on the disciplinary review boards' continued decisions to keep Mr. Pearson confined in Ad Seg, in knowing disregard of the lack of justification for such confinement."), and because Plaintiff argues that "[n]o *claim* brought by Mr. Pearson predates September 25, 2017," Defendants' motion in this regard is denied.

5

### b. Personal Involvement

"It is well settled in this Circuit that personal involvement of the defendants in alleged deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(internal quotation marks omitted).  In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit identified five categories of evidence that may establish the liability of a supervisory official for a subordinate's conduct under § 1983, holding:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

Both sides appear to approach the different defendants' personal involvements, at least in part, through the second, third, and/or fifth *Colon* categories. *See* Def. Mem. L. at 9;[2]  Def. Reply, at 1 (citing *Colon* categories as a potential basis for supervisory liability);

---

[2]([I]t is not enough for Plaintiff merely to allege that a policy or custom is unconstitutional and that the supervisory official is aware of that policy or custom, as the FAC broadly alleges. . . .  Instead, he must specifically allege that the official knew that unconstitutional actions were taking place, *i.e.*, that Defendants knew about the constitutional deprivations alleged by Plaintiff.")(citing *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983) for the proposition that "supervisory official may be liable where he created or allowed a policy or custom under which unconstitutional practices occurred . . . when he has knowledge that unconstitutional practices were taking place.")(interior quotation marks omitted).

*id.* at 3;[3]  Pl. Mem. L. at 4-5;[4] *id.* at 14-15;[5] *id.* at 15;[6] *id.*;[7] *id.* at 16;[8]  *id.* at 17;[9] *id.* at 17-

---

[3]("[T]he FAC is deficient with respect to defendant Annucci's personal involvement. The only acts or omissions that plaintiff attributes to defendant Annucci are that he 'failed to remedy the unconstitutional policies and practices[.]' FAC at ¶ 16. This is simply a regurgitation of the third *Colon* criteria for Section 1983 liability of corrections executives rather than an allegation.")

[4]("The DOCCS Commissioner Defendants . . . each had policy-making and supervisory authority within DOCCS and were personally involved in authorizing and maintaining the unconstitutional policies and customs that caused Mr. Pearson to spend more than 13 years in solitary confinement without meaningful review. [FAC]  ¶¶ 15–23, 79. As stated in the FAC, "[t]he DOCCS Superintendent Defendants . . . each had policy-making and supervisory authority with regard to SHU and the DOCCS disciplinary process, including reviewing, affirming, modifying, or reversing dispositions imposed at Tier III Hearings." See FAC ¶ 80. The DOCCS Superintendent Defendants each were "responsible for the care, custody, and safety of all prisoners under their immediate jurisdiction." *Id.* Each of the DOCCS Superintendent Defendants also "managed or manages a DOCCS facility where Mr. Pearson was housed in the SHU and had policy-making and supervisory authority with regard to all operations at their respective facilities." Id. Additionally, these Defendants "review disciplinary hearings that impose punishments to solitary confinement. The DOCCS Superintendents were personally involved in the decision to confine [Mr. Pearson as well as other inmates] to Ad Seg and SHU." *Id.*  Defendant Donald Venettozzi ("Venettozzi") had policy-making and supervisory authority with regard to SHU and the DOCCS disciplinary process. Mr. Venettozzi's authority includes reviewing, affirming, modifying, or reversing dispositions imposed at Tier III Hearings. *See id.* ¶¶ 27–28, 76, 81.  Defendants JOHN or JANE DOES 1-15, as members of the DOCCS SHMC, were part of the review committee that made the determination to keep Mr. Pearson confined in Ad Seg despite the lack of penological justification for his continued confinement in solitary confinement. Through their policy-making authority, supervisory authority, and Ad Seg review responsibilities, each of Defendants Venettozzi and John and Jane Does 1-15 could have and should have ended Mr. Pearson's time in unconstitutional solitary confinement but did not. *Id.* ¶ 82.

[5]Plaintiff argues:

While Defendants' concede that knowledge establishes deliberate indifference, they incorrectly represent that to establish Defendants' deliberate indifference, Mr. Pearson must demonstrate they had knowledge of the specific details of his case. *See* Mot. 9. But such factual allegations are not necessary to plead personal involvement or deliberate indifference. The case of *Pusepa v. Annucci*, No. 17-CV-1765 (RA), 2019 WL 690678 (S.D.N.Y. Feb. 19, 2019), is particularly instructive. There, the court addressed the standard for pleading a high-ranking prison official's deliberate indifference to constitutional violations caused by policies over which he had ultimate responsibility. *See id.* at *6–7 (citing *Cash v. Cnty. of Erie*, 654 F.3d 324 (2d Cir. 2011)). After examining case law establishing the pleading standards necessary to allege that prison officials were "on notice" of constitutional violations, the court held that the plaintiff was not required to allege that the prison officials "were aware of [] specific misconduct while it was happening, as awareness of the *risk* of unconstitutional actions suffices for liability under Section 1983." *Id.* at *7 (citing *Farmer*, 511 U.S. at 828) (emphasis in original). Thus, to plead deliberate indifference, Mr. Pearson is required only to plead facts demonstrating that Defendants were on notice of the substantial risk that Mr. Pearson's and other inmates' constitutional rights were violated as a result of DOCCS's unconstitutional administrative segregation policies and practices. *See id.; see also Arroyo v. Coughlin*, No. 92- CV-0426E(F), 1993 WL 117529, at *1 (W.D.N.Y. Apr. 13, 1993) ("An official demonstrates deliberate indifference when he has actual or *constructive notice* of a specific risk to an inmate's safety and fails to take steps to protect the inmate from injury.") (emphasis added).

18.[10]   However, in 2020, the Second Circuit disagreed with a district court's reliance "on *Colon* to conclude that [supervisory defendant] Bachmann was conceivably personally involved in violating Tangreti's rights under the Eighth Amendment either because Bachmann was grossly negligent in supervising [other] officers or because she failed to act on information indicating that Tangreti was at substantial risk of sexual abuse." *Tangreti v. Bachmann*, 983 F.3d 609, 615–16 (2d Cir. 2020)(internal quotation marks and citation omitted).   After examining *Iqbal* and other Circuits' treatment of supervisory liability following *Iqbal, see id.* at 616-18, the Second Circuit joined other circuits "in holding that after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).   The Second Circuit noted that "'[t]he factors necessary to establish a [§ 1983] violation will vary

---

[6]("[T]he FAC alleges more than sufficient facts demonstrating each Defendants' awareness of the 'longstanding, pervasive, [and] well-documented risks' associated with DOCCS administrative segregation policies.")

[7]("[B]ased on their respective positions, responsibilities, and experience, each and every Defendant knew or should have known of a substantial risk that Mr. Pearson's time in Ad Seg violated his constitutional rights.")

[8](arguing that Defendant Annunci's personal involvement exists because he has been named in at least 10 cases challenging the unconstitutional conditions and practices in connection with DOCCS Ad Seg., that DOCCS recognized Annucci's personal involvement in a case that documented constitutional violations, and because Annucci played a lead role in negotiating a "special housing unit interim stipulation with New York Civil Liberties Union which imposed disciplinary guidelines for hearing officers to apply with all infractions.")

[9]("The FAC alleges that on at least one occasion since September 2017, each of the DOCCS Deputy Commissioner Defendants . . . , as mandated by New York regulations, reviewed, approved, and signed-off on the disciplinary review boards' continued decisions to keep Mr. Pearson confined in solitary confinement. This alone constitutes direct personal involvement in Mr. Pearson's suffered constitutional violations.") (internal quotation marks and citation omitted).

[10]("Despite the known dangers of prolonged solitary confinement, and in contravention of their duties under New York regulations and under the Constitution, the 'Superintendents regularly rubber-stamped [review committee] determinations.'")(quoting FAC ¶ 71)

with the constitutional provision at issue" because the elements of different constitutional violations vary." *Id.* (quoting *Iqbal*, 556 U.S. at 676), but held that "[t]he violation must be established against the supervisory official directly." *Id.*

In *Tangreti*, the defendant-supervisor was alleged to have violated the plaintiff's Eighth Amendment rights because she failed to prevent a sexual assault.  The Circuit stated:

> In this case, "[t]o state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Vega* [*v. Semple*], 963 F.3d 259, 273 (2d Cir. 2020) (quoting [*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L. Ed.2d 811 (1994)].  Deliberate indifference in this context "means the official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970).
>
> Tangreti must therefore establish that Bachmann violated the Eighth Amendment by Bachmann's own conduct, not by reason of Bachmann's supervision of others who committed the violation. She must show that Bachmann herself "acted with 'deliberate indifference'"—meaning that Bachmann personally knew of and disregarded an excessive risk to Tangreti's health or safety. *Id.* (quoting *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970). Tangreti cannot rely on a separate test of liability specific to supervisors. *See Whitson v. Stone Cty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("These defendants are thus liable only if they personally displayed deliberate indifference to the risk that [the inmate] would be assaulted.") (emphasis added).

*Id.*  at  618-19.

Neither side has addressed their personal involvement arguments under *Tangreti*'s holding that a plaintiff must establish that a defendant violated a plaintiff's constitutional rights directly.  While there are allegations plausibly indicating that some defendants

9

violated Plaintiff's rights directly, there are other allegations that could be construed as indicating that some defendants violated Plaintiff's constitutional rights indirectly. *See, e.g.,* FAC ¶ 79 ("The DOCCS Commissioner Defendants Annucci, Morley, O'Gorman, Koenigsman [sic] and Bellnier each had policy-making and supervisory authority within DOCCS and were personally involved in authorizing and maintaining the unconstitutional policies and customs that lead Mr. Pearson to spend more than 13 years in solitary confinement without meaningful or timely review. Through their policy-making and supervisory authority, each of Defendants Annucci, Morley, O'Gorman, Koenigsman [sic] and Bellnier could have ended Mr. Pearson's time in unconstitutional solitary confinement but did not."). The Court is hesitant to rule on this issue without giving the parties the opportunity to address personal involvement under *Tangreti*. Accordingly, Defendants' motion to dismiss on personal involvement grounds is denied with leave to renew.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, Dkt. 26, is **DENIED**. That much of the motion seeking dismissal for lack of personal involvement is denied with leave to renew. If Defendants intend to renew this aspect of their motion, they must do so within thirty (30) days of this Decision and Order.

**IT IS SO ORDERED.**

Dated: March 21, 2022

Thomas J. McAvoy
Senior, U.S. District Judge

10